Waleska FLORES, on behalf of herself
and all others similarly situated,

v.

SHAPIRO & KREISMAN, Gerald M.
Shapiro, David S. Kreisman, and
Logs Financial Services, Inc.

No. CIV.A.01–3280.

United States District Court,
E.D. Pennsylvania.

Oct. 29, 2002.

Michael D. Donovan, Donovan Searles, LLC, Philadelphia, PA, for plaintiff.

Alan C. Gershenson, Blank, Rome Comisky & McCauley, LLP, Philadelphia, PA, Andrew M. Schwartz, Marchall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for defendant.

*MEMORANDUM AND ORDER*

McLAUGHLIN, District Judge.

This case arises out of dealings between the plaintiff and the defendants relating to the collection of a debt from a residential

mortgage. The plaintiff alleges that the defendants violated state and federal laws protecting consumers from unfair or deceptive business or debt collection practices. Before the Court is the defendants' motion to dismiss. The Court will grant in part and deny in part the motion.

## I. Background

The plaintiff, Waleska Flores, is an individual and residential mortgage debtor. The defendant Shapiro & Kreisman ("S & K") is a law firm with a number of offices, including one in King of Prussia, Pennsylvania. The principal purpose of the business of S & K is to collect debts already in default using the mails and telephone. Defendants Gerald Shapiro and David Kreisman are partners of S & K. Defendant LOGS Financial Services, Inc. ("LOGS") is a corporation with offices in twenty-six states. Shapiro is the founder and chief executive officer of LOGS, and Kreisman is the vice chairman. The principal purpose of the business of LOGS is the collection of debts.

The plaintiff was the subject of collection efforts by Alliance Mortgage Company ("Alliance"), a residential mortgage lender, in October 2000. Thereafter, Alliance forwarded the plaintiff's account to S & K for collection.

On December 4, 2000, S & K sent the plaintiff a letter stating that S & K had been retained to initiate a lawsuit to foreclose the plaintiff's mortgage. The letter advised that "the amount of the debt is $21,901.07", and "[t]he creditor to whom the debt is owed is Bankers Trust Company of California." Compl. Ex. A.

On December 13, 2000, S & K sent to the plaintiff a letter stating that it was "in response to [Ms. Flores'] request for information concerning the amount necessary to Reinstate the above loan and resolve the pending foreclosure action." The letter

stated that: "as of this date the amount due to ALLIANCE MORTGAGE COMPANY is $1,100.21." It also stated that: "This amount does not include outstanding attorney's fees or costs associated with this office's handling of the matter. All figures are subject to verification and may change since we are not authorized to delay the foreclosure action. Currently, outstanding attorney fees and costs are $650.00." Compl. Ex. B.

On December 28, 2000, S & K sent a letter to Kirsten F. Keefe, at Philadelphia's Community Legal Services, Inc., counsel to Waleska Flores and her husband, Israel. The letter stated that: "Our office is in receipt of your letter dated December 22, 2000, concerning your clients, Israel and Waleska Flores." It also stated that:

> Pursuant to your request a detail [sic] of amounts due and owing is itemized below:

| | |
|---|---|
| Attorneys fees | $300.00 |
| Title search and examination | $350.00 |
| Total to Shapiro & Kreisman | $650.00 |

Compl. Ex. C. The letter instructed counsel to "keep in mind that these figures are subject to change since we are not authorized to delay the foreclosure action." *Id.*

On January 8, 2001, S & K filed a mortgage foreclosure action against the plaintiff in the Court of Common Pleas for Philadelphia County, on behalf of "Bankers Trust Company of California, N.A., as Trustee of Mellon CRA Mortgage Loan Trust 1998–A." Compl. ¶¶ 27–28.

On January 9, 2001, LOGS sent a letter to the plaintiff and her husband. The letter stated that: "The following is a conv [sic] qualification package. We have included some basic questions and answers about services LOGS may be equipped to provide customers who are experiencing financial difficulty." Compl. Ex. D. The

letter stated that loans are referred to LOGS by Alliance when it "has been determined that a loan cannot be brought current by the borrower and is in imminent danger of foreclosure . . . ." *Id.*

On March 15, 2001, S & K obtained a default judgment against the plaintiff in the foreclosure action.

On April 2, 2001, the plaintiff filed a Chapter 13 bankruptcy case in United States Bankruptcy Court for the Eastern District of Pennsylvania.

In the three-count complaint before the Court, the plaintiff alleges violations by the defendants of the Pennsylvania Loan Interest and Protection Law, 41 Pa.Stat. § 101, *et seq.* ("Act 6"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. § 201–1, *et seq.* ("CPL"), and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The defendants have moved to dismiss each claim.

## II. Discussion

### A. Act 6

The plaintiff claims that the defendants violated Act 6 by attempting to collect attorneys' fees in excess of $50 before the filing of the Complaint in Mortgage Foreclosure, and by actually collecting fees in excess of $50 after the foreclosure action that were incurred pre-foreclosure.

■ Act 6 is Pennsylvania's general usury law. *See Pollice v. Nat'l Tax Funding,* 225 F.3d 379, 392 (3d Cir.2000); 41 Pa.Stat. § 101 *et seq.* The plaintiff bases her claim on section 406 of the statute that provides:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

(1) Reasonable fees for services included in actual settlement costs.

(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa.Stat. § 406.

■ The statute prohibits a residential mortgage lender from "contracting for" or "receiving" attorneys' fees in excess of $50 prior to the commencement of foreclosure. 41 Pa.Stat. § 406(3). The complaint does not allege that the defendants either contracted for or received attorneys' fees in excess of $50 prior to the commencement of foreclosure proceedings. The complaint alleges that the plaintiff paid the fees only after foreclosure. Compl. ¶ 36.

The question then is whether, after foreclosure commenced, it was permissible for the defendants to contract for or receive fees in excess of $50 that were incurred pre-foreclosure. The language of the statute seems to answer this question. Subsection 2 limits the receipt of attorneys' fees "upon commencement of foreclosure" to fees that are "reasonable and actually incurred." There is no claim here that the fees were not reasonable or actually incurred.

This conclusion is consistent with the discussions of Section 406 contained in a series of decisions from the Bankruptcy

Court holding that the phrase "other legal action" in Section 406(2) does not include a contested matter in bankruptcy court to obtain relief from the automatic stay. *See In re DeTone*, 262 B.R. 359, 361 (Bankr. W.D.Pa.2001); *In re Schwartz*, 68 B.R. 376, 381–83 (Bankr.E.D.Pa.1986); *In re Cervantes*, 67 B.R. 816, 820 (Bankr. E.D.Pa.1986).

In *Schwartz*, for example, Bankruptcy Judge Fox discusses the legislative history of Section 406 and the scheme established by the Pennsylvania legislature to regulate the process by which the lender recovers under its mortgage obligation. "Within this context, through 41 Pa.Stat. § 406, the legislature balanced the competing interests and established certain bright line rules for determining a residential mortgagee's right to pass on its legal expenses to the borrower." *In re Schwartz*, 68 B.R. at 383.

 The Court agrees with the analysis of Bankruptcy Judge Fox. Before a thirty day notice is sent, no legal expenses whatsoever may be charged. After the thirty day period, reasonable and actually incurred legal fees may be assessed, but not in excess of $50. If a foreclosure action is commenced, reasonable fees actually incurred may be assessed. This scheme appears to contemplate that in some periods, a lender will not receive full reimbursement for legal expenses incurred. But once the lender has gone to the trouble of instituting a foreclosure action, it may recover such fees.[1]

The Court, therefore, grants the motion to dismiss the Act 6 count.

### B. Unfair Trade Practices and Consumer Protection Law

 The CPL is Pennsylvania's basic consumer protection law. *See* Carolyn L. Carter, *Pennsylvania Consumer Law* § 2.1 (1997); 73 Pa.Stat. § 201–1 *et seq.* It prohibits unfair methods of competition and unfair and deceptive acts and practices, including any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. § 201–2(4)(xxi). This provision is known as the catch-all provision.

There are two aspects of the plaintiff's CPL claim. The primary argument is that violation of Act 6 constitutes a *per se* violation of the CPL. *See Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488, 494 n. 20 (1987). Because the Court has found there to be no claim stated under Act 6, this argument is insufficient to defeat the motion to dismiss the CPL claim.

The second aspect of the CPL claim is that the deceptive nature of the defendants' collection attempts are unfair and deceptive acts or practices under the CPL. The defendants argue that this aspect of the claim should be dismissed because the CPL requires averment and proof of the elements of common law fraud, including material misrepresentation of existing fact,

---

1. After oral argument on the motion, the defendants brought to the Court's attention *Gmerek v. State Ethics Comm'n*, 569 Pa. 579, 807 A.2d 812, 819–20 (2002) (per curiam) in which the Pennsylvania Supreme Court found the Pennsylvania Lobbying Disclosure Act, 65 Pa. Cons.Stat. §§ 1303–1311, unconstitutional because it infringes on the Pennsylvania Supreme Court's exclusive jurisdiction to regulate the conduct of attorneys. The defendants argue that the reasoning of *Gmerek* compels this Court to find Act 6 unconstitutional. Because the Court has found that the complaint fails to state a claim under Act 6, I will not consider the constitutional argument. *See Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 2188, 153 L.Ed.2d 413 (2002); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 50 (3d Cir.1985); *Commonwealth v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1159 (2000).

scienter, justifiable reliance on the misrepresentation, and damages. These elements are not all alleged in the complaint.

Prior to 1996, the catch-all provision of the CPL prohibited only fraudulent conduct. At that time, many courts interpreted the provision to require all elements of common law fraud to be proven in order to succeed on a claim for violation of the catch-all provision. *See* Carter § 2.5.4.21(B). In 1996, however, the provision was amended to include a prohibition on "deceptive" conduct as well as fraudulent conduct. 73 Pa.Stat. § 201–2(4)(xxi) (Historical and Statutory Notes).

■■■ The Court is persuaded by Bankruptcy Judge Sigmund's decision in *In re Patterson*, 263 B.R. 82, 92–93 (Bankr. E.D.Pa.2001), that by adding a prohibition on "deceptive" conduct, the 1996 amendment to the CPL eliminated the need to plead all of the elements of common law fraud in actions under the CPL. Under general principles of statutory interpretation, no word should be rendered redundant. The new word "deceptive" in the statute, therefore, must have been intended to cover conduct other than fraud. *Id.* at 92 n. 17. Combining the 1996 amendment with the Pennsylvania Supreme Court's broad construction of the CPL as a remedial law that must be liberally interpreted to abate deceptive and unfair practices, Bankruptcy Judge Sigmund concluded that it is no longer necessary for a plaintiff to allege all of the elements of common law fraud in order to recover under the CPL. *In re Patterson*, 263 B.R. at 92–93 (citing *Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974)). This Court agrees.

The highest Pennsylvania court to address the catch-all pleading issue since the statute's amendment is the Superior Court, in *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa.Super.2000). In *Booze,* the Court relies on *Hammer v. Nikol,* 659 A.2d 617, 620 (Pa.Cmwlth.1995), to find that the catch-all provision requires a plaintiff to prove the elements of common law fraud. *Booze* relies on the pre–1996 interpretation of the catch-all provision in *Hammer* and makes no attempt to explain why the term "deceptive" that was added in 1996 did not alter the standard. *See In re Patterson*, 263 B.R. at 92 & n. 17 (discussing how the *Booze* court failed to analyze the impact of the 1996 amendment to the CPL on the requirement that a plaintiff show all of the elements of common law fraud to prevail in a CPL action).

This Court is persuaded that the Pennsylvania Supreme Court would not adopt *Booze*'s holding that all of the elements of common law fraud need to be shown for there to be a violation of the CPL for the reasons given by Bankruptcy Judge Sigmund in *Patterson*. The Court, therefore, declines to apply *Booze*. Thus, the plaintiff does not need to allege all of the elements of common law fraud.

Because the plaintiff here has alleged that the defendants' conduct was deceptive, there is no need for her to allege all of the elements of common law fraud.[2] Compl. ¶ 34; 69.

The defendants also argue that the plaintiff has not alleged an "ascertainable loss" as a result of the defendants' conduct, as required by the statute. 73 Pa. Stat. § 201–9.2. The Court finds that the

**2.** The defendants cite to *Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (2001), for the proposition that the elements of fraud must still be alleged to state a claim under the CPL's catch-all provision. The *Weinberg* court did not address that issue, however, *Weinberg* involved a false advertising claim, which falls under a different provision of the CPL.

complaint sufficiently alleges an ascertainable loss. Compl. ¶¶ 41, 72; *see* Oral Arg. Tr. at 37.

Finally, after oral argument the defendants contended that the plaintiff could not make out a claim under the CPL because the plaintiff did not purchase or lease goods or services from any of the defendants, citing *Balderston v. Medtronic Sofamor Danek, Inc.,* 285 F.3d 238, 242 (3d Cir.2002). In *Balderston,* the plaintiff neither purchased the goods nor personally used the goods he allegedly purchased. The Third Circuit, therefore, held that the plaintiff did not have standing to bring suit under the CPL. *Id.*

The Third Circuit had previously held that the only two express limitations under the CPL on who has standing to bring a private cause of action are: (1) the purchase of goods or services must lead to a loss as a result of an unfair or deceptive practice and (2) the class of litigants is limited to those individuals purchasing or leasing goods primarily for consumer rather than commercial purposes. *Smith v. Commercial Banking Corp.,* 866 F.2d 576, 583 (3d Cir.1989). Nothing in *Balderston* undermines the holding of *Smith* with respect to what limitations exist on who has standing to bring a private cause of action under the CPL.

██ Under *Smith,* the CPL extends to loans financing the purchases of goods or services for personal use. *Id.* A different approach "would insulate all kinds of practices from [the CPL], such as debt collection, which occur after entering an agreement and which were not a basis for the original agreement." *Id.*

██ The defendants in the present case were engaged in debt collection. The CPL reaches unfair and deceptive debt collection practices. The plaintiffs, therefore, can bring suit under the CPL against a business involved in debt collection that allegedly engages in unfair and deceptive practices.

The Court, therefore, denies the motion to dismiss the CPL count.

### C. Fair Debt Collection Practices Act

The plaintiff alleges that the defendants violated the FDCPA by sending misleading or confusing information, and by sending a communication—the January 9, 2001 letter—directly to the plaintiff, after having been advised that the plaintiff was represented by counsel. The defendants argue that the letters are not, as a matter of law, misleading or confusing.

██ The FDCPA, provides a remedy for consumers who are subjected to abusive, deceptive, or unfair trade collection practices by debt collectors. *See Police,* 225 F.3d at 400. Courts apply a "least sophisticated debtor" standard to analyze the protections of the FDCPA, including whether such a debtor would be confused or misled by contradictory or overshadowing information contained in debt collection notices. *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991). This standard is lower than that of a reasonable debtor, and reflects the policy of the FDCPA to protect both shrewd and gullible consumers. *See Wilson v. Quadramed Corp.,* 225 F.3d 350, 354–4 (3d Cir.2000) (citations omitted).

Reading the complaint and the letters attached to the complaint in the light most favorable to the plaintiff, the Court cannot conclude that none of the letters, as a matter of law, would confuse or mislead the "least sophisticated debtor."

██ The FDCPA also prohibits a debt collector from communicating with a consumer in connection with the collection of a debt if the debt collector knows the consumer is represented by an attorney

with respect to such debt. 15 U.S.C. § 1692c(a). The complaint sufficiently alleges a violation of this provision.[3]

The Court, therefore, denies the motion to dismiss the FDCPA count.

**3.** Although LOGS has argued that the FDCPA does not apply to it because it is not a "debt collector," the Court must accept the well-pleaded allegations of the complaint as true on a motion to dismiss. *In re Burlington Coat Factory Secur. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir.1997). The complaint in this case plainly states that LOGS was a business "the principal purpose of which is the collection of debts ...." Compl. ¶ 8. LOGS also argued that the January 9, 2001 letter was not an attempt to collect a debt, but an attachment to the letter states that "this financial institution and the investor are acting as debt collectors attemptin [sic] to collect a debt." Compl. Ex. D, at 3. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384–85 n. 2 (3d Cir.1994) (courts may consider exhibits attached to complaint in evaluating motion to dismiss).