619 A.2d 769

**PRIME MEATS, INC., an Ohio Corporation**

v.

**William YOCHIM and Patrice Yochim, Appellants,**

v.

**VERNICK FINANCIAL SERVICES, INC.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1992.

Filed Jan. 27, 1993.

See also 416 Pa.Super. 659, 601 A.2d 1303.

Gary H. Nash, Erie, for appellants.

Edwin W. Smith, Erie, for appellees.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

HESTER, Judge:

William and Patricia Yochim appeal from the order of the Court of Common Pleas of Erie County denying them class certification. After scrutinizing the uncontroverted testimony of appellants, it is clear that they were unable to establish the common law elements of fraud. Specifically, they failed to prove misrepresentation of a material fact and justifiable reliance upon that misrepresentation. As a finding of fraudulent conduct is a prerequisite to invoking the Consumer Protection Law under which appellants appeal, and as this is the basis upon which appellants assert their ability to represent the proposed class, we must affirm the order denying certification.

On March 12, 1987, appellants purchased a food contract and a service contract from appellee, Prime Meats, Inc., a retailer of food to consumers. The food contract consisted of a six-month supply of meat which would be custom-cut as per appellants' specifications and delivered to their home, and re-order assistance was given when requested by the customer. In addition, if the order was not to the customer's satisfaction, if the ordered items were not delivered, or if the quality was not as expected, generally, the company would replace the order. Also, if the purchasers should relocate before the completion of the contract, it would be transferred to a similar company in the customer's new location. As an added service to the customer, the delivery person would unload the meat order and pack it in the customer's freezer before leaving. Customers were given the opportunity to renew the food service contract at the end of the six-month period.

The service contract was a separate agreement between appellants and appellee. It, too, offered a quality guarantee and assurance that the delivery driver would pack the customer's order in their freezer upon arrival. Additional services were: a twenty percent discount on the price of the order; replacement meat if the order spoiled due to to freezer

malfunction; repair service on freezers owned by customers, as long as the units were ten years old or less; repair service on all freezers sold by appellee; and delivery of "loaner" freezers while repairs were made to a customer's freezer. In addition, the contract provided a guarantee against food order price increases for twenty-four months.

The price of the food contract was $720. Financing was arranged for appellants by appellee through Vernick Financial Corporation. After financing, the total amount owed by appellants was $758.22. The price of the service contract was $999. At a 17.995% interest rate, the total amount financed by appellants for the service contract was $1196.64. It lasted for ten years, after which time the customer could renew for $19.95 a year. Appellants were told that by law, they had three days to cancel the contracts.

At the hearing, appellants testified that they understood their right to cancel either or both contracts but that the method of cancellation was unclear.[1] They testified that no misrepresentations were made to them during the sale of the contacts, and that the contracted services were performed as promised. Finally, appellants testified that they were told that only freezers ten years old or less would be covered, and that the salesman told them that their freezer was at least sixteen years old. Nonetheless, appellants testified that they purchased the $999 service agreement *specifically* for the freezer service guarantee. Appellants clearly reiterated their knowledge that their freezer was *not* warranted, Notes of Testimony, 5/24/91, at 9, 18, and 19. Specifically, Mrs. Yochim testified that after the contracts were signed, but prior to the salesman's departure, the salesman reiterated the fact that their freezer was not covered by the service contract because it was approximately sixteen years old. While Mr. Yochim testified on the other hand, that upon reflection, he felt that even if his freezer had been covered, and even if Prime Meats had come to his home to repair it on multiple occasions,

---

1. Appellants testified that while they fully understood that they had the right to cancel the contract within three days following the sale, they made no attempt to cancel within the time allowed by law.

regardless of how many times the meat had been cut to his specifications or replaced, and regardless of the discount, he "felt the price was too high for what [they] received." Reproduced Record ("R.R."), at 181.

On May 24, 1990, Prime meats filed a collection suit against appellants, seeking payment on the unpaid balance of $759.62 on the service contract. Appellants responded by filing an answer, new matter, and a counterclaim against Prime Meats. In the counterclaim, appellants' alleged that the contract was "unconscionable" as it was excessive in price for the services provided. They also alleged numerous other violations of interstate and consumer acts. Specifically, they claimed that the contract was printed in small print, it did not contain an easily detachable notice of cancellation, and that appellee had failed to complete a portion of appellants' contract.[2] Appellants sought to establish a proposed class of individuals consisting of all other Pennsylvania customers of appellee who had signed retail installment agreements with it and had financed those retail agreements through Vernick Financial Services, Inc., or any other financial institution through which financing was arranged directly or indirectly by appellee from July 25, 1984, through the date of the filing of their complaint, May 24, 1990. In addition, appellants joined Vernick Financial Services, Inc., the financing agency for the Prime Meat contract, as an additional defendant in the class action counterclaim.

On October 30, 1990, after appellants had filed preliminary objections, the trial court ruled, "Unconscionability may be used as an affirmative defense by the defendant but not for affirmative relief on the counterclaim." R.R. at 63. Consequently, appellants filed an amended claim seeking to raise unconscionability as an affirmative defense under the Pennsylvania Unfair Trade Practices Act. Prime Meats filed an amended complaint seeking to limit the legal theories for the

2. On appeal, these issues were not raised. Appellants choose to argue only their position with regard to the "catch-all" provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa.C.S. § 201–2(4)(xvii) which requires proof and pleading of fraud. Appellants' brief at 7.

creation of appellants' class to specifically pleaded provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPA"), 73 Pa.C.S. § 201–1 et seq. In response, appellants alleged that Prime Meats was guilty of unconscionable and unfair pricing practices under UTPA. In addition, they averred that Prime Meats had violated two specific violations of the Federal Trade Commission Trade Regulation Rule concerning cool-off periods for door-to-door sales, 16 C.F.R. 429, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. § 201–7.[3] On February 25, 1991, the trial court ruled that the parties "shall have the right to re-submit the issues raised in other pretrial motions. These objections may be re-submitted at a later time in the form of objections to certification of class, motions for summary judgment or motions for partial summary judgment." R.R. at 102.

After a period of discovery, appellants moved for class certification. Appellees, who opposed certification, argued that appellants had failed to prove the prerequisites which are necessary to a class action. After briefs were filed, and arguments were heard, the court issued its order denying certification of appellants' proposed class on March 12, 1992. Appellants filed a motion for consolidation of all pending collection actions. On December 20, 1990, the hearing court issued an order which consolidated specific cases and stayed collection activity by appellees during the pending class action certification process. Appellees' request for bond pending the stay was denied by the hearing court on January 14, 1991. Consequently, appellees appealed both the December 20, 1990 order and the January 14, 1991 order. On October 22, 1991, we quashed the appeal. This appeal from the order denying class certification followed.

Appellants' only argument on appeal is a challenge to the order denying them the permission to proceed as a class. Specifically, they charge that appellees are guilty of fraudulent conduct and unfair trade practices because they charged an unconscionable sales price for the service agreement. They

---

3. Issues relating to these provisions were not argued on appeal.

argue that the unconscionable sales price constitutes unfairness in violation of Federal Trade Commission ("FTC") standards. Before addressing the merits of appellants' claim, we look to Pa.R.C.P. 1702 [4] for the prerequisites of a class action.

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Adopted June 30, 1977, effective Sept. 1, 1977.

Further, to determine whether the representative parties adequately will represent the class under Pa.R.C.P. 1702(5), we must look to the criteria set forth in Pa.R.C.P. 1708 [5] which provides:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

4. Pa.R.C.P. 1702(4) is at issue on appeal.

5. This is the section upon which the hearing court relied in denying certification.

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation if the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate class actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

**(b)** Where equitable or declaratory relief alone is sought, the court shall consider

(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

**(c)** Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b). Adopted June 30, 1977, effective Sept. 1, 1977.

468

■ It is well-settled in the law, that an appeals court will give "appropriate deference" to the findings of the hearing court with regard to class certification. *Janicik v. Prudential Insurance Co. of America,* 305 Pa.Super 120, 127, 451 A.2d 451, 454 (1982). " 'Trial courts are vested with broad discretion in determining definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class.' " *Id., quoting Klemow v. Time, Inc.,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1975). Therefore, our standard of review mandates that we not overturn the hearing court's ruling absent an abuse of discretion. *Hayes v. Motorists Mutual Insurance Company,* 370 Pa.Super. 602, 537 A.2d 330 (1987).

In this appeal, the only dispute addressed is appellants' ability or lack thereof to represent the class. Appellants argue that appellees specifically violated the catch-all provision of 73 Pa.C.S. § 201–2(4)(xvii) which prohibits "[e]ngaging in any other *fraudulent* conduct which creates a likelihood of confusion or of misunderstanding." (emphasis added). In section (59) of their class action allegations, appellants define fraudulent conduct as follows: "(a) Charging an unconscionable sales price for the service agreement to all customers constitutes an unfair trade practice. (b) Charging an unconscionable sales price for the service agreement constitutes 'unfairness' in violation of Federal Trade Commission Standards." R.R. at 83–84. While prohibited from asserting a claim of unconscionability for affirmative relief on their counterclaim, appellants seek, on appeal, to raise the issue as the means by which they may be afforded affirmative relief under UTPA. These claims regarding the unconscionable sales price were the crux of appellants' counterclaim in which they alleged that appellees had engaged in fraudulent conduct. Appellees argue that appellants are not capable of properly representing a class of individuals because the value of the service agreement would vary with the level of service utilized by each customer. It is upon these issues that this appeal focuses.

Appellees challenge appellants' contention that common issues of fact predominate with regard to the alleged *unconscionable* fee charged by appellees for the service contract, while appellees stress the UTPA requirement that appellants *prove* fraudulent conduct to maintain a cause of action. In *Rizzo v. Michener*, 401 Pa.Super. 47, 61, 584 A.2d 973, 980 (1990), we recognized:

> "[T]he key to invoking § 201–2(xvii) of the Consumer Protection Law is fraud ... Actual fraud has five elements which must coalesce. There must be (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result."

We have determined therefore, that in order to recover under 73 Pa.C.S. § 201–2(4)(xvii), the elements of common law fraud must be proven.

However, in support of their contention as to the existence of fraud in this appeal, appellants seek to convince us that there exists a *statutory* fraud—one presumably where there exists no need to prove the five well-settled elements. Instead, appellants argue that the fundamental purpose of the catch-all provision in the statute "is to create enforceable unfair trade practice violations that do not require proof of common law fraud." Appellants' brief at 11. In support of their contention, appellants rely upon *Commonwealth v. Monumental Properties*, 459 Pa. 450, 329 A.2d 812, (1974). Appellants maintain that *Monumental Properties* clearly paves the way for the recognition of a new legal concept—statutory fraud. Specifically, they refer to the following language: "Since the Consumer Protection Law was in relevant part designed to thwart *fraud in the statutory sense*, it is to be construed liberally to effect its object of preventing unfair or deceptive practices." *Id.*, 459 Pa. at 460, 329 A.2d at 817 (emphasis added).

We believe the above language was not an attempt to redefine the common law principle of fraud. Rather, it was a reference to the numerous legislative attempts to thwart

fraud. This is readily evident from a telling footnote in the opinion.

The classic examples [of legislative attempts to prevent the exploitation of unfair advantage in market transactions] are the statute of frauds, ...; the statute of limitations, ...; the statute of wills, ....

Modern instances of legislative attempts to remedy fraudulent dealings include the Securities Act of 1933, ...; Securities Exchange Act of 1934, ...; Uniform Fraudulent Conveyance Act, ...; Pennsylvania Securities Act of 1972, ....

*Id.,* 459 Pa. at 458, 329 A.2d at 816.

At no point in the opinion, however, does the Supreme Court redefine fraud. The Court merely states that as a society, we recognize the existence of fraud, and we have enlisted the services of the legislature to find the means by which it may be deterred. In fact, the Court chose to include a portion of the House Conference Report which accompanied the original passage of the Federal Trade Commission Act. It states:

It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known unfair practices were specially defined and prohibited, it would be at once necessary to begin over again. If Congress were to adopt the method of definition, it would undertake an endless task.

*Id.,* 459 Pa. at 463, 329 A.2d at 818, quoting H.R.Conf.Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914). Clearly, the legislature and the courts recognize that havoc would reign supreme if an attempt was made to create a *statutory* fraud.

We now proceed to determine whether appellants have satisfied the UTPA requirement and have proven the existence of fraudulent conduct on the part of Prime Meats. Initially, we note that the common law elements of fraud require that a purchase must have been made in reliance upon a misrepresentation or other alleged deceptive practice, resulting in a detriment to the individual consumer. Clearly, the existence and subsequent proof of the existence of common

law fraud or of reliance, generally, would require an individual determination as to each potential class member.[6]

In *Klemow v. Time Incorporated*, 466 Pa. 189, 352 A.2d 12 (1976), the Pennsylvania Supreme Court recognized the well-settled conclusion that fraud is an inappropriate vehicle upon which to predicate a class action. After urging the appellant in that case to proceed individually, the Court went on to note:

> Plaintiff attempts to assert a cause of action for fraud. The successful maintenance of a cause of action for fraud includes, inter alia, a showing that the plaintiff acted in reliance on the defendant's misrepresentation.... Because such a showing would normally vary from person to person, this cause of action is not generally appropriate for resolution in a plaintiff class action. Thus, a plaintiff might choose to proceed individually....

*Id.*, 466 Pa. at 197, 352 A.2d at 16. *See also Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973); *Savitz v. Weinstein*, 395 Pa. 173, 149 A.2d 110 (1959); *Edelson v. Bernstein*, 382 Pa. 392, 115 A.2d 382 (1955).

In the present case, much testimony was devoted to the establishment of the variances in the value of the service contract. Appellants testified that the value of the contract would be different for individual purchasers depending, in part, on how often the purchasers availed themselves of the services offered under the contract, and in part and upon the duration of the accompanying food service contract. Specifically, when asked by opposing counsel if the value or benefit to each of the individuals in the proposed class would vary in accordance with how often the service agreement was used, Mrs. Yochim replied, "Yes." R.R. at 167. However, it is not on this portion of the testimony upon which we rely in affirming the order. We find more revealing the testimony of the parties which uncontrovertibly refutes the existence of the

6. Appellants unsuccessfully urge this court to dispense with the requirement of reliance. The basis of their argument lies in their contention as to the existence of statutory fraud and its definition as any unfair act or practice. Since we have dispensed with that claim, and as common law fraud requires proof of detrimental reliance, we will not address the context of appellants' second issue.

472

threshold element in maintaining a cause of action for fraud— misrepresentation. When asked if any misrepresentations were made to her at the time of purchase, Mrs. Yochim replied, "No." R.R. at 159. Mr. Yochim testified, "My complaint now is that I felt that after receiving the service and, of course, the meat and whatever they provided, that it [the price of the service contract] was too high a price." R.R. at 178. Later in his testimony, Mr. Yochim admitted, "If we had purchased more food and continued purchasing meat, the value of the plan would have changed." R.R. at 182. He also denied that any misrepresentations had been made to him at the time of purchase. If, indeed, there was fraudulent conduct by appellee, appellants are incapable of asserting commonality.

Therefore, since UTPA requires that an individual asserting a claim must prove fraudulent conduct, and as proof of fraudulent conduct necessitates proof of the existence of a misrepresentation and reliance upon that misrepresentation, we find that appellants are not suitable representatives for the class based upon their own admissions that no misrepresentations were made to them during the sale of the service agreement. As a consequence, appellants assertions of fraud will not support a class action against appellees.

Order affirmed.