**Weiler v. SmithKline Beecham Corp.**

*Louis C. Ricciardi,* for plaintiffs.
*Ellen R. Rogoff,* for defendant.

HERRON, *J.,* October 8, 2001—Defendant State SmithKline Beecham Corporation has filed preliminary objections to the complaint of plaintiffs Kelli R. Weiler and Diane Wojcik. For the reasons set forth in this opinion, the court is issuing a contemporaneous order overruling the objections.

## BACKGROUND

The allegations in the complaint center on SmithKline's use of phenylpropanolamine, the active

ingredient found in some over-the-counter decongestant medicines that supposedly is associated with stroke, seizure and damage to the cardiovascular and central nervous systems. The plaintiffs contend that SmithKline was aware of these side effects but advertised that its products that included PPA were safe and never warned the purchasers of the dangers of the PPA products.

Both plaintiffs purchased PPA products and seek to represent a class of those PPA products purchasers who have not suffered personal injury. According to the complaint, the members of the proposed class suffered economic damages because the PPA products did not safely alleviate the symptoms of the class members' colds, flu and allergies. On the basis of these allegations, the plaintiffs have asserted claims for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,[1] breach of implied warranty, strict liability (failure to warn) and unjust enrichment/restitution. In response, SmithKline asserts that the plaintiffs' claims are legally insufficient.

## DISCUSSION

For the purposes of reviewing preliminary objections asserting legal insufficiency, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa. Super. 2000). Furthermore,

---

1. 73 Pa.C.S. §201-1—201-9.3.

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

## I. *The Complaint Alleges Complete Counts for UTPCPL Violations*

The objections do not raise any substantive defect in the plaintiffs' UTPCPL claims that may be addressed at this stage. As a result, the objections to the UTPCPL claims are overruled.

### A. The Plaintiffs Allege a Causal Link Necessary To Establish a Violation of Section 201-2(4)(xxi)

The plaintiffs present a detailed history of section 201-2(4) to argue that UTPCPL section 201-2(4)(xxi),[2] also known as the "catchall provision," does not require evidence of each element of common-law fraud. SmithKline counters that the provisions of the UTPCPL that it allegedly violated, including the catchall provision, require proof of reliance. It is not clear that these arguments are mutually exclusive. Indeed, the court must conclude that the current version of the catchall provision requires proof of a causal link between the SmithKline misconduct and the harm to the plaintiffs

2. 73 Pa.C.S. §201-2(4)(xxi).

but does not require evidence of each element of common-law fraud.

Before 1996, the catchall provision prohibited only *"fraudulent* conduct, which creates a likelihood of confusion or of misunderstanding." [3] This required plaintiffs pleading a violation of the catchall provision to prove all of the elements of common-law fraud. See *e.g., Prime Meats Inc. v. Yochim,* 422 Pa. Super. 460, 468, 619 A.2d 769, 773 (1993) ("to recover under 73 Pa.C.S. §201-2(4)(xvii), the elements of common-law fraud must be proven"). *Id.,* 422 Pa. Super. at 469, 619 A.2d at 773. Because reliance is an element of common-law fraud, courts held that a plaintiff acting under the catchall provision must have relied on the defendant's improper conduct. See *id.,* 422 Pa. Super. at 470, 619 A.2d at 774.

In 1996, however, the catchall provision was amended to prohibit deceptive conduct in addition to fraudulent conduct as follows:

*"[(xvii)] (xxi)* Engaging in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding." Act 146, P.L. 906, §1, December 4, 1996.

According to the plaintiffs, this eliminates the requirement that they plead each element of common-law fraud for violations of the catchall provision.

When construing a statute, "the legislature is presumed to have intended to avoid mere surplusage; thus, whenever possible, courts must construe a statute so as to give

---

3. Before 1996, the catchall provision was numbered as 73 Pa.C.S. §201-2(4)(xvii).

effect to every word contained therein." *Berger v. Rinaldi,* 438 Pa. Super. 78, 86, 651 A.2d 553, 557 (1994). If the legislature modifies the language of a given statute, the amendment "ordinarily indicates a change in the legislative intent." *Commonwealth v. Pierce,* 397 Pa. Super. 126, 130, 579 A.2d 963, 965 (1990) (citing *Masland v. Bachman,* 473 Pa. 280, 289, 374 A.2d 517, 521 (1977)).

Here, the insertion of the phrase "or deceptive" implies that *either* deceptive *or* fraudulent conduct constitutes a violation of the catchall provision and that deceptive conduct is not the same as fraudulent conduct. Moreover, it is clear from the legislative history of the catchall provision amendment that the General Assembly's intent was to expand the scope of the UTPCPL. See *e.g.,* Pa. Legis. Journal—Senate 1996, v.II, pp. 2427-28 (discussing general motivations for UTPCPL amendments). This conclusion also comports with the Pennsylvania Supreme Court's instructions that the UTPCPL "is to be construed liberally to effect its object of preventing unfair or deceptive practices." *Commonwealth v. Monumental Properties Inc.,* 459 Pa. 450, 460, 329 A.2d 812, 817 (1974). See also, *Wallace v. Pastore,* 742 A.2d 1090, 1093 (Pa. Super. 1999) (citing *Monumental Properties* and applying the UTPCPL liberally in a private action context). Given these circumstances, the court must conclude that the purpose of the 1996 amendment was to eliminate the requirement that a plaintiff plead all the elements of fraud to sustain a claim under the catchall provision.[4] To hold otherwise would be

---

4. This is consistent with the general principle that "[t]he UTPCPL must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices." *Wallace v.*

to find the word "deceptive" redundant and would clash with the rules of statutory interpretation.

This holding finds support in *Booze v. Allstate Insurance Co.,* 750 A.2d 877 (Pa. Super. 2000).[5] In *Booze,* the court stated that "to state a claim under the catchall provision of the Unfair Trade Practices and Consumer Protection Law, a plaintiff must prove the elements of common-law fraud." 750 A.2d at 880. However, this conclusion was based on section 201-2(4)(xvii), the pre-1996 version of the catchall provision, and the court specifically noted that the catchall provision had been amended. Cf. *In re Patterson,* 263 B.R. 82, 92 n.17 (Bankr. E.D. Pa. 2001) (concluding that "the addition of the word 'deceptive' was intended to cover conduct other than fraud which was clearly embraced by the pre-amendment statute").[6]

---

*Pastore,* 742 A.2d 1090, 1093 (Pa. Super. 1999) (citing *Commonwealth v. Monumental Properties Inc.,* 459 Pa. 450, 329 A.2d 812 (1974)).

5. This conclusion does not conflict with *Weinberg v. Sun Co.,* 565 Pa. 612, 777 A.2d 442 (2001). In *Weinberg,* the court examined a claim brought under the false advertising provision of the UTPCPL and did not address either the old or amended version of the catchall provision. Accordingly, the court's comment that "[n]othing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common-law elements of reliance and causation" would not be applicable to claims brought under the revised catchall provision. 565 Pa. at 618, 777 A.2d at 446.

6. Ironically, *Patterson* reads *Booze* as interpreting the post-1996 version of the catchall provision. 263 B.R. at 92 & 92 n.17. For the reasons set forth *supra,* the court must respectfully disagree with *Patterson's* reading.

The court's opinion in *Tesauro v. The Quigley Corporation,* August term 2000, no. 1011 (C.P. Phila. April 9, 2001) (Herron, J.) is not to the contrary. In *Tesauro,* there was no indication that the plaintiffs were attempting to proceed on a *deceptive,* as opposed to *fraudulent,* conduct claim, making the court's statement that all elements of fraud were required appropriate.[7] As a result, even if there are no allegations of fraud, the plaintiffs' claim for breach of the catchall provision is legally sufficient so long as the complaint alleges "deceptive conduct which creates a likelihood of confusion or of misunderstanding."

Of course, the fact that the catchall provision does not require proof of common-law fraud does not obviate the need to establish a causal connection between SmithKline's allegedly deceptive conduct and the harm the plaintiffs have suffered. As noted by several Pennsylvania appellate court decisions, a private plaintiff, whose right to act arises under UTPCPL section 9.2, must show that he or she was damaged as a result of a defendant's unlawful act.[8] *Weinberg v. Sun Co.,* 565 Pa.

---

7. In addition, it does not appear that the *Tesauro* plaintiffs alleged reliance or causation, rendering their catchall provision claim invalid regardless of whether their claims were based on deception or fraud.

8. In its entirety, UTPCPL section 9.2(a) reads as follows:

"(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this Act, may bring a private action to recover actual damages or $100, whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than $100, and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees." 73 Pa.C.S. §201-9.2.

612, 618, 777 A.2d 442, 446 (2001) (Section 9.2 "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action"); *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 402, 676 A.2d 1237, 1241 (1996) (Section 9.2's "use of the phrase 'as a result of' indicates the intent of the legislature to require a causal connection between the unlawful practice and a plaintiff's loss"). These interpretations of section 9.2 are unaffected by the 1996 modifications of the catchall provision. As a result, the plaintiffs must plead that they suffered harm as a result of SmithKline's deceptive conduct.

A review of the complaint reveals that the plaintiffs have pled the required element of causation. According to paragraph 45 of the complaint, the damages suffered by the class are a "direct and proximate result" of SmithKline's violations of the UTPCPL. Because the court must accept the plaintiffs' allegations as true, this is sufficient to allege causation and allows the plaintiffs' claim under the catchall provision to survive Smith-Kline's demurrer.

## B. The Plaintiffs Have Alleged Reliance in Support of Their False Advertising, Fraud and Fraudulent Misrepresentation Claims[9]

Two of the plaintiffs' UTPCPL claims are for fraudulent misrepresentation and fraud, both of which require proof of reliance. *Bortz v. Noon,* 556 Pa. 489, 499, 729

---

9. SmithKline challenges only the element of reliance and not the remaining elements of these three counts.

A.2d 555, 560 (1999); *Kit v. Mitchell,* 771 A.2d 814, 819 (Pa. Super. 2001). In paragraph 17 of the complaint, the plaintiffs assert that they purchased the PPA products "[b]ased on the defendant's promotions, marketing, advertisements and other representations," many of which are alleged to have been false. This is sufficient to allege that the plaintiffs relied on SmithKline's conduct that violated the UTPCPL.

The plaintiffs argue that a false advertising claim brought under UTPCPL section 201-2(4)(v)[10] does not require proof of reliance or common-law fraud. This is incorrect. While at least one Superior Court case indicated that reliance was not an element under the UTPCPL's false advertising provision,[11] the Pennsylvania Supreme Court in *Weinberg* made it clear that a private plaintiff pursuing a 201-2(4)(v) claim must allege reliance. 565 Pa. at 618, 777 A.2d at 445-46. As discussed *supra,* however, the plaintiffs have alleged reliance, and the objections to the plaintiffs' UTPCPL claims asserting a failure to allege reliance are overruled.

10. 73 Pa.C.S. §201-2(4)(v).

11. In *DiLucido,* for example, the court held that plaintiffs "are not required to prove the elements of common-law fraud to establish violations of sections (ii), (v) and (xvi)." 450 Pa. Super. at 401, 676 A.2d at 1241. The *Weinberg* court found this statement to be incorrect because in *Commonwealth v. Hush-Tone Industries Inc.,* 4 Pa. Commw. 1 (1971), the primary case on which the statement was based, "was an action brought by the Attorney General in the name of the Commonwealth, and the quoted elements of proof are the sorts of considerations appropriate for a high public official responsible for protecting public interests." 565 Pa. at 617, 777 A.2d at 446.

## C. The Court Cannot Examine the Plaintiffs' Class Action Allegations in the Context of Preliminary Objections

As a final argument against the plaintiffs' UTPCPL claims, SmithKline asserts that individual questions of reliance make this matter inappropriate for class action treatment. This argument cannot be raised in the context of preliminary objections and must be overruled.

Under Pennsylvania Rules of Civil Procedure, the class that the plaintiff claims to represent must be certified by the court.[12] Pa.R.C.P. 1707. To certify a class, a court must find that the class meets the requirements of numerosity, predomination of common questions of law or fact, typicality of the named plaintiff's claims, ability of the named plaintiffs to fairly and adequately protect the interests of the class and the fairness and efficiency of a class action as a method for adjudication. Pa.R.C.P. 1702.

While these five elements are important, a court may not address questions of certification "until the pleading stage is concluded, [and] attacks on the form of the complaint or demurrers to attack the substance" have already been disposed of. *Niemiec v. Allstate Ins. Co.,* 721 A.2d 807, 810 (Pa. Super. 1998). This is "to ensure that the class proponent is presenting a non-frivolous claim ca-

---

12. The five class certification requirements, as set forth in Rule 1702, are numerosity; predomination of common questions of law or fact; typicality of claims; ability of the plaintiffs to fairly and adequately protect the interests of the class; and the fairness and efficiency of a class action as a method for adjudication. *Weinberg v. Sun Co. Inc.,* 740 A.2d 1152, 1162-63 (Pa. Super. 1999).

pable of surviving preliminary objections." *Janicik v. Prudential Ins. Co. of America,* 305 Pa. Super. 120, 129, 451 A.2d 451, 455 (1982). Thus, a trial court reviewing preliminary objections "should not . . . concern[] itself with the preliminary objections to the class action allegations at all." *Sherrer v. Lamb,* 319 Pa. Super. 290, 294, 466 A.2d 163, 165 (1983). See also, Pa.R.C.P. 1705 (stating that issues of fact with respect to the class action allegations are not to be raised in preliminary objections); *Niemiec,* 721 A.2d at 810 (distinguishing between the certification and the pleading stages by stating that "upon a motion for class action certification the court considers whether a claim may be brought by a class of plaintiffs, whereas at the earlier, preliminary objection stage, the court must decide whether there exists a valid claim to be brought at all, no matter who the plaintiff").[13]

The court shares SmithKline's doubts about whether the instant action will survive the certification process, especially in light of the *Weinberg* court's holding. See 565 Pa. at 618, 777 A.2d at 446. (If the plaintiff's false advertising claims were to proceed as a class action, "questions of fact applicable to each individual private plaintiff would . . . be numerous and extensive"). Indeed,

---

13. One case appears to be an isolated exception to this rule. In *Adamson v. Pennsylvania Liquor Control Board,* 49 Pa. Commw. 54, 410 A.2d 392 (1980), the Superior Court thoroughly measured the proposed class against the class requirements and, based on the defendant's preliminary objections, concluded that the plaintiff's action would not benefit the class. This, however, is the only case where a Pennsylvania court has examined the class itself when reviewing preliminary objections and appears to violate the principle set forth in later cases.

it seems inconceivable that the plaintiffs will be able to show the predominance of common questions of fact and law, as required for certification. Regardless of these doubts, however, the court must limit its current examination to those issues properly raised in preliminary objections, not at a certification hearing. Consequently, the ability of the plaintiffs to sustain this suit as a class action cannot be considered now, and the objections attacking the class allegations must be overruled.

## II. *The Prohibition on Recovery Under a Strict Liability (Failure To Warn) Theory for Economic Damages Does Not Apply to This Matter*

SmithKline next argues that the plaintiffs' claim for strict liability is deficient because the plaintiffs suffered only economic damages. While citations from several Pennsylvania cases hint that SmithKline is correct, the context of those citations shows that the plaintiffs' strict liability count is permissible.

SmithKline's attack is premised on the economic loss doctrine. This doctrine has its origins in Pennsylvania in *REM Coal Co. v. Clark Equipment Co.,* 386 Pa. Super. 401, 563 A.2d 128 (1989). There, the court considered

"[T]he appropriateness of permitting recovery in tort where a product malfunctions because of an alleged defect in the product, causing damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff." 386 Pa. Super. at 403, 563 A.2d at 129.

Ultimately, the court concluded that "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." 386 Pa. Super. at 412-13, 563 A.2d at 134. Later, this prohibition on recovery in tort was extended to non-commercial plaintiffs. See *Jones v. General Motors Corp.*, 428 Pa. Super. 544, 546, 631 A.2d 665, 666 (1993) (finding "that the rationale behind *REM Coal* is equally applicable to disputes involving claims brought by individuals"). In its current form, the Commonwealth's version of the doctrine precludes recovery for economic losses in negligence[14] and strict liability actions where the plaintiff has suffered no physical or property damage. *Moscatiello v. Pittsburgh Contractors Equipment Co.*, 407 Pa. Super. 378, 385-86, 595 A.2d 1198, 1201 (1991) ("purely economic losses cannot be recovered where the plaintiff's action sounded solely in negligence or strict liability").

While SmithKline's assertions regarding the right to recover economic loss are technically correct, they must be placed in their proper context. An examination of the economic loss doctrine reveals that its purpose is to limit a plaintiff to contract remedies, when available:

---

14. The economic loss doctrine initially applied solely to strict liability torts but has gradually been extended to negligence claims and, by some courts, to intentional torts as well. See Steven C. Tourek, Thomas H. Boyd and Charles J. Schoenwetter, *Bucking the "Trend:" The Uniform Commercial Code, The Economic Loss Doctrine and Common Law Causes of Action for Fraud and Misrepresentation,* 84 Iowa L. Rev. 875, 885-91 (1999) (tracing the history of the economic loss doctrine nationwide).

"In *REM,* we adopted the rationale of the United States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). There, the Supreme Court expressed its concern for maintaining the separate spheres of the law of contract and tort. It emphasized that where an allegedly defective product causes damage only to itself, and other consequential damages resulting from the loss of the use of the product, the law of contract is the proper arena for redressing the harm because in such a case, the damages alleged relate specifically to product quality and value as to which the parties have had the opportunity to negotiate and contract in advance. They have allocated the risks of possible types of losses, and agreed on the level of quality that will be given for the price demanded. *When the product fails to conform and only economic losses result, the parties' recovery* one against the other *for economic losses should be limited to an action on that contract and no additional recovery in negligence or strict liability is permitted." New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.,* 387 Pa. Super. 537, 550-51, 564 A.2d 919, 925-26 (1989). (emphasis added)

In the instant matter, there does not appear to be a contract on which the plaintiffs could base their claim. If it is not, the entire purpose behind the economic loss doctrine, *i.e.,* precluding plaintiffs from recovering in tort for contract claims, would not be served by barring the plaintiffs' strict liability claim.

### III. *The Plaintiffs' Breach of Implied Warranty Claim Is Legally Sufficient*

Under Pennsylvania law, an agreement for the sale of goods may include implied warranties of merchantability and fitness for a particular purpose. 13 Pa.C.S. §§2314, 2315. SmithKline asserts that, because the plaintiffs did not suffer any physical harm, they are precluded from recovering under an implied warranty theory.

There is no support in Pennsylvania law for Smith-Kline's argument that physical harm is required for breach of warranty recovery. It appears that Pennsylvania permits recovery for economic injuries for breach of warranty. See *Altronics of Bethlehem Inc. v. Repco Inc.,* 957 F.2d 1102, 1106-1107 (3d Cir. 1992) (allowing recovery of consequential damages for breach of warranty claim).[15] The Pennsylvania cases SmithKline cites are not to the contrary. In *Brinkman v. Shiley Inc.,* 732 F. Supp. 33 (M.D. Pa. 1989), *aff'd,* 902 F.2d 1558 (3d Cir. 1989),

---

15. The court agrees with the sentiments expressed in *Rivera v. Wyeth-Ayerst Laboratories,* 121 F. Supp.2d 614 (S.D. Tex. 2000), where the court addressed a class of plaintiffs who suffered only economic harm from a defective drug:

"If for example, a person uses a defective tire which does not malfunction in his particular case, then that person has obtained the benefit of the bargain. With defective medicine, however, even if the medicine does not cause physical injury, the user may spend months or years worrying about potential illness caused by the medicine. Part of what people bargain for when they purchase medicine is a safe product which will not cause them worry. The court cannot say as a matter of law that there was no breach of warranty, even absent physical injury, for a medicine with a revoked assurance of safety." 121 F. Supp.2d at 619.

the court held that a plaintiff who suffered only psychic and emotional injuries from a defective artificial heart valve could not recover under an intentional infliction of emotion distress theory. Nowhere did the *Brinkman* court address economic damages. Similarly, the plaintiff's claim in *Angus v. Shiley Inc.,* 989 F.2d 142 (3d Cir. 1993), was insufficient not because she did not suffer physical injuries but rather because she did not establish that the product in question was defective and because she alleged only emotional injuries. Here, in contrast, the complaint alleges repeatedly that the PPA products were defective and "not of merchantable quality or safe or fit for the intended use or purpose" for various reasons. Complaint at ¶¶62-65, 67.[16] Accordingly, the plaintiff's failure to allege that she suffered physical harm does not render her breach of warranty claim legally insufficient.

## IV. The Plaintiffs' Unjust Enrichment Claim Is Proper

SmithKline's arguments against the plaintiffs' unjust enrichment claim are based on the premise that their tort claims are legally insufficient. See defendant's memo-

---

16. The foreign cases relied on by SmithKline are also readily distinguishable, as the plaintiffs in most of the cases cited failed to show that the products supplied by the defendants were defective. See *e.g., Lauterbach v. Shiley Inc.,* civ. a. no. H-87-3208, 1991 WL 148137, at *8 (S.D. Tex. March 29, 1991) (plaintiff could not recover for breach of warranty where "[a]bsent a defective product"); *Sill v. Shiley Inc.,* 735 F. Supp. 337, 340 (W.D. Mo. 1989), *aff'd,* 909 F.2d 508 (8th Cir. 1990) ("[i]n the absence of properly presented facts that Shiley had done something to her that has caused her distress, *i.e.,* that there is some defect in the valve implanted in her, plaintiff does not have a cognizable claim for infliction of emotional distress").

randum at 21 ("if SmithKline's demurrers are sustained for Counts II and III, Count IV also must be dismissed"). Because their tort counts have survived the objections, the plaintiffs may proceed on their claim for unjust enrichment. Cf. *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris Inc.,* 171 F.3d 912, 937 (3d Cir. 1999) (finding "no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the district court properly dismissed the traditional tort claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing").

## CONCLUSION

Each of the plaintiffs' claims is legally sufficient for the purposes of the objections.

## ORDER

And now, October 8, 2001, upon consideration of defendant SmithKline Beecham Corporation's preliminary objections to the complaint of plaintiffs Kelli R. Weiler and Diane Wojcik and the plaintiffs' response thereto and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the preliminary objections are overruled. The defendant is directed to file an answer to the complaint within 20 days of this order.