**In re Alfreda JOHNSON, Debtor.**

**Alfreda JOHNSON, Plaintiff,**

v.

**Margo ROBINSON, a/k/a Robinson Financial Group, d/b/a Robinson Financial Services, and Pioneer Agency, and Equicredit Corporation, and First American Title Insurance Company, and Fairbanks Capital Corporation, Defendants.**

Bankruptcy No. 02–34686–SR.
Adversary No. 02–1427.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 15, 2003.

---

Sarah Pugh, Becket & Lee LLP, Malvern, PA, for eCast Settlement Co., assignee of Chase Manhattan Bank USA, NA.

Leslie J. Rase, Lansdowne, PA, for Bank of New York.

David Wolf, Philadelphia, PA, for Alfreda Johnson.

#### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### *Introduction.*

Before the Court is the Motion of Defendants First American Title Insurance Company ("First American") and the Pioneer Agency ("Pioneer") to Dismiss Debtor, Alfreda Johnson's Amended Complaint under F.R.C.P. 12(b)(6), or in the alternative for an Order compelling a more definite statement of her pleading under F.R.C.P. 12(e). An answer in opposition to the Motion was filed in which the Debtor requested that the Motion be denied, or in the alternative that she be permitted to file a second amended complaint. Oral argument was heard on April 1, 2003. For the reasons which follow the Motion will be granted and the Complaint as to the Movants will be dismissed.

### *Background.*

On December 2, 2002, the Debtor filed a complaint alleging that she had been victimized by a "predatory lending" scheme when she refinanced an existing mortgage and took out a home improvement loan. The mortgage broker, the original mortgage lender, the title insurance agency and the title insurance company that were involved in the transaction were all named as defendants, as was the present holder of the mortgage. On January 22, 2003, the title insurance company, First American and the title insurance agency, Pioneer filed a Motion identical to the instant Motion; that is, to dismiss or for a more definite statement. That Motion was rendered on moot on January 10, 2003 when the Debtor filed her Amended Complaint.

The Amended Complaint contains six counts, however, claims against First American and Pioneer are stated in only two of them; specifically, Count II—Common Law Fraud and Count III—Pennsylvania Unfair Trade Practices and Consumer Protection Law [1] (UDAP). First American and Pioneer renew their Motion at this juncture, arguing that the Amend-

---

**1.** 73 Pa.C.S.A. § 201–1 *et seq.*

ed Complaint still fails to plead allegations of fraud with the degree of specificity required under the Rules of Civil Procedure, and that the Amended Complaint, even when viewed in its best light, fails to state claims upon which relief may be granted.

The factual underpinnings of the Debtor's Motion are set forth in rich detail in the Debtor's rather lengthy Amended Complaint. The Debtor is a 51 year old teacher's aid employed by the Philadelphia School District. She owns a home at 1953 73rd Street, Philadelphia, Pennsylvania, which is alleged to be badly in need of repair. The Debtor alleges that she was solicited by Defendant Margo Robinson and induced to enter into a home improvement loan transaction. Robinson is a mortgage broker who apparently operates as such through the Defendant entities Robinson Financial Services, and Robinson Financial Group.

A $71,250 loan transaction was subsequently arranged with Defendant Equi-Credit Corporation. The transaction contemplated the payoff of Johnson's existing mortgage of approximately $32,000.00. From the balance of the new borrowing, approximately $5,700 was to be paid to Robinson, and approximately $1,000 was to be disbursed to Johnson. The remaining funds, of approximately $32,500.00, were to be paid to a contractor Robinson had allegedly retained to perform improvements to the Johnson residence.

Johnson alleges that no improvements were ever made to her home, but her grievances extend well past this obvious dilemma. Johnson alleges that Robinson never intended to arrange for any improvements to her home, but instead planned from the start to steal her money. Johnson also alleges that the violation of various consumer lending statutes occurred in the course of the transaction, and that the entire transaction was the product of fraudulent conduct on the part of all of the defendants. In the latter respect, Johnson alleges that material terms of the transaction were concealed from her and that the financial terms of the transaction were patently unaffordable given her economic circumstances, such that it was inevitable that she would default on the loan and face the loss of her home. In this regard, Johnson alleges that no one ever explained to her the true cost of the loan she was taking, or the risks she faced given her income level and what was to become her new debt service obligation.

Johnson's amended complaint thus breaks down as follows:

| Count | Defendant(s) |
| --- | --- |
| I—Truth and Lending Act Violations | Robinson, Robinson Financial Services, Robinson Financial Group, EquiCredit Corporation, and Fairbanks Capital Corporation |
| II—Common Law Fraud | All Defendants |
| III—UDAP Violations | All Defendants |
| IV—Racketeering Influenced Corrupt Organizations Act ("RICO") Violations | Robinson |
| V—Real Estate Settlement Procedures Act (RESPA) Violations | EquiCredit and Robinson |
| VI—Equal Credit Opportunity Act (ECOA) Violations | EquiCredit |

Johnson's original complaint contained literally no allegations of specific misconduct on the part of the movants, a fact which no doubt led to their request for its dismissal. As to the Movants, Johnson's Amended Complaint differs in only one material respect from her original complaint. Specifically, in her amended Complaint Johnson has added a new paragraph (# 18) wherein she alleges that "... each Defendant was acting as an agent, principal, employee, employer, subsidiary, and/or owner of one or more of the other defendants." Consistent with this theory, Johnson's amended Complaint also now recites at various points that the multiple defendants acted in concert with one another in the alleged scheme to defraud her. On a similar note, in both her original and amended complaint, Johnson asserts that because of their sophistication and experience in lending transactions, and her own lack thereof, all of the defendants stood in a fiduciary or quasi-fiduciary relationship to her, and as a consequence they had a duty to inform and/or advise her that entering into the loan transaction was an unwise decision on her part.

### Legal Standard.

In considering a Rule 12(b)(6)[2] motion to dismiss, a court must accept all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, as true and view them in the light most favorable to the non-moving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3rd Cir.1989) (citations omitted); *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3rd Cir.) *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). A complaint must not be dismissed for failing to state a claim

unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See City of Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 118 (3rd Cir.1993) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

### Discussion.

■ The Debtor's claims against First American and Pioneer are essentially similar in nature. In Count II, the Debtor alleges common law fraud on their part. In Count III the Debtor alleges their violation of paragraph (xxi) of UDAP § 201–2(4). This paragraph of the statute is commonly referred to as its "catch all" provision and, as construed by numerous courts, it has been held to require a finding of fraudulent conduct; which is to say that in order to prevail the Debtor must demonstrate the same elements as are necessary in connection with her count for common law fraud. *DiLucido v. Terminix International, Inc.*, 450 Pa.Super. 393, 401, 676 A.2d 1237, 1241 (1996); *Prime Meats, Inc. v. Yochim*, 422 Pa.Super. 460, 469, 619 A.2d 769, 773 (1993).

A cause of action for common law fraud consists of the following elements: (1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may either be actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result. *Daw-*

---

**2.** Bankruptcy Rule 7012(b) makes this rule applicable to adversary proceedings.

*son v. Dovenmuehle Mortgage, Inc.*, 2002 WL 501499 at * 6 (*citing Wittekamp v. Gulf & Western, Inc.*, 991 F.2d 1137, 1142 (3d Cir.1993), *cert. denied*, 510 U.S. 917, 114 S.Ct. 309, 126 L.Ed.2d 256 (1993)).

First American and Pioneer argue that the Debtor's amended Complaint fails to allege the necessary elements of common law fraud against them. In this respect the Movants point out that they are hardly mentioned anywhere in the Amended Complaint, the particularized allegations of wrongdoing in which go entirely to the conduct of Robinson and Equicredit. More specifically, the Movants stress that with but one exception there is nowhere in the Complaint to be found an allegation that First American or Pioneer made *any* oral or written representations to the Debtor.[3] There is nothing, they say, even alleged to have emanated from them upon which the Debtor could conceivably have relied. The Court agrees. The gravamen of the Amended Complaint involves the conduct of the loan broker, Robinson, and the alleged predatory lender, Equicredit. The numerous allegations as to these defendants are specific and clear and would certainly withstand a Motion to Dismiss. The same cannot be said as to the Movant defendants. The Debtor seeks to affirmatively link the title agent and the title insurance company to the scheme alleged in her Amended Complaint, but despite two opportunities to plead, the Debtor has failed to identify a single material representation that either of the movant defendants made to her. Other things being equal, therefore, the Movant's dismissal Motion would be granted summarily.

As noted, however, in an effort to address the rather glaring shortcomings of her original complaint the Debtor, in her amended complaint, has added the allegations of agency and concerted action previously described. Her causes of action against First American and Pioneer at this juncture are thus predicated on two separate bases. The first of these is her allegation that all of the defendants were agents of one another, presumably such that the acts and omissions of each may be attributed to the entire group. The second basis for the Debtor's cause of action is that First American and Pioneer stood in a fiduciary relationship to the Debtor, such that they had a duty to step forward and provide her with information and advice which should otherwise have been provided to her by the loan broker and/or the lender. As stated, neither of the Debtor's legal theories pass muster.

As to the first, the Court finds that under principles of applicable law the Debtor's allegations of fraud as to First American and Pioneer are still not articulated with sufficient particularity to survive the present dismissal motion. In this respect, the Court finds the minimal, strategic alterations to the original Complaint unavailing. On the latter score, the Court finds that the Debtor's fiduciary relationship theory of liability fails as a matter of law. The Amended Complaint will accordingly be dismissed as to the Movants.

**3.** The exception in question relates to the Debtor's allegation that Pioneer misrepresented that the money to be disbursed to the Debtor from the loan proceeds ($966.20) was actually paid to her. The Debtor concedes, however, that a check payable to the Debtor for this amount was cut by the title agent at the closing table. The Debtor thereafter, and allegedly at Robinson's insistence, signed the check over to Robinson. The Court cannot discern in these circumstances any indicia of actionable fraud on the part of Pioneer, which points out, moreover, that the signing over of the check occurred post closing such that there could be no reliance on the part of the Debtor on this "representation" in deciding whether to enter into the loan transaction.

In reaching its conclusion the Court notes that in the context of a motion to dismiss for failure to plead fraud with particularity, F.R.C.P. 9(b) requires that the plaintiff's allegations be taken as true. *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y. 1989) *citing Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986). The Court also observes, however, that Fed.R.Civ.P. 9(b) specifically states, concerning allegations of fraud or mistake, that, "the circumstances constituting fraud or mistake shall be stated with particularity." F.R.C.P. 9(b). Fraud must normally therefore be pled with specifics concerning time, place, speaker, and at times even the content of the alleged misrepresentation. *Luce,* 802 F.2d at 54. The purpose of such specificity is to give the defendants "a reasonable opportunity to answer the complaint," *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–58 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), to "place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). *See also DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) (listing fair notice, protection of reputation, and reduction of number of strike suits as purposes for Rule 9(b)).

The Court recognizes and numerous courts have held that allegations of date, place, time, speaker, etc. fulfill the function of providing the necessary particulars of alleged fraudulent behavior, but that nothing in the rule necessarily requires them. A Plaintiff is free to use alternative means of injecting precision and some measure of substantiation into allegations of fraud. *Seville, supra* at 791. Indeed, Courts are directed to be "sensitive" to the fact that the application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir.1992) The rules, however, do not permit a complaint as utterly bereft of detail as the present one. The Debtor's Amended Complaint alleges no specifics whatever with respect to the Movants. Rather, it simply labels them liable by virtue of their association to the transaction. This is insufficient.

With respect to the Debtor's "group action" theory, it has been recognized that where allegations of fraud are leveled against multiple defendants it is not sufficient to simply allege fraudulent conduct on the part of a group of defendants generally. Rather, each defendant is entitled to notice of the particular misrepresentations alleged on its part *Sandvik AB v. Advent International Corp.,* 83 F.Supp.2d 442, 448 (D.Del.1999); *Cinalli v. Kane,* 191 F.Supp.2d 601, 609 (E.D.Pa. 2002);[4] Again, the Debtor's Amended Complaint is conspicuously deficient in this regard, as there are no misrepresentations attributed to either of the movants. At oral argument the Debtor gave no indication as to how this shortcoming might be

---

**4.** If a claim involves multiple defending parties, a claimant usually may not group all wrongdoers together in a single set of allegations. Rather, the claimant is required to make specific and separate allegations against each defendant. Therefore, an allegation that misrepresentations were made "at the direction, under the supervision, or with the knowledge and consent of all the defendants" will fail because it does not promote the purposes of Rule 9(b), to provide fair notice and to lessen the number of meritless fraud claims. 2 *Moore's Federal Practice,* § 9.03[1][f] (Matthew Bender 3d).

remedied in a repleading. Given that the Debtor was on notice of this precise deficiency in her original pleading by reason of the Movant's earlier Motion to Dismiss, and has been unable to correct the problem despite ample time to do so, the court declines to afford her yet another opportunity to amend her pleading. Accordingly, the Amended Complaint, insofar as it is based on common law fraud and violation of UDAP, will be dismissed as to the Movants.

■ The Court, as noted, likewise rejects the Debtor's fiduciary relationship theory of liability. In this respect, the Debtor alleges that by virtue of their superior knowledge and resources the Movants established a quasi-fiduciary relationship of confidence and trust with her that gave rise to a duty of care and disclosure. To succeed on a claim of breach of fiduciary duty a plaintiff must first show that a fiduciary relationship exists in that "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." *Destefano & Associates, Inc. v. Cohen,* 2002 WL 1472340 *3 (Pa.Com.Pl.) *quoting Commonwealth Dept. of Transp. v. E–Z Parks, Inc.,* 153 Pa.Cmwlth. 258, 268, 620 A.2d 712, 717 (1993). After establishing that a fiduciary duty exists then the plaintiff must then show that a subsequent breach occurred. *Id.* Against these principles, the Debtor's complaints fails in all respects.

■ In the first place, the Debtor cites no authority for the proposition that in the abstract a borrower stands in a fiduciary relationship to the title insurer and closing agent in a loan transaction. Pennsylvania, in particular, has never heretofore recognized such a relationship.

In an analogous context, however, Pennsylvania courts have held that a lender is not a fiduciary of a borrower. *Grace v. Moll,* 285 Pa. 353, 355, 132 A. 171 (1926); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 461, 410 A.2d 344, 348 (1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). A fiduciary relationship may nevertheless arise if the lender gains substantial control over the borrower's business affairs. *Blue Line Coal Company, Inc. v. Equibank,* 683 F.Supp. 493, 496 (E.D.Pa.1988) *quoting Stainton v. Tarantino,* 637 F.Supp. 1051, 1066 (E.D.Pa.1986) Control over the borrower is demonstrated when there is evidence that the lender was involved in the actual day-to-day management and operations of the borrower or that the lender had the ability to compel the borrower to engage in unusual transactions. *Blue Line Coal Co., supra* at 496 *quoting NCNB Nat. Bank v. Tiller,* 814 F.2d 931, 936 (4th Cir.1987). The mere monitoring of the borrower's operations and the proffering of management advice by lenders, without more, does not constitute control. *Cosoff v. Rodman,* 699 F.2d 599, 610–611 (2d Cir.1983) *See also Krivo Indus. Supply Co. v. Nat. Distillers & Chemical Corp.,* 483 F.2d 1098, 1105 (5th Cir.1973) ("Merely taking active part in the management of the debtor corporation does not automatically constitute control"); *James E. McFadden, Inc. v. Baltimore Contractors, Inc.,* 609 F.Supp. 1102, 1105 (E.D.Pa.1985) (holding that creditor must assume absolute and total control not just take steps to minimize risk).

■ The Debtor herein has alleged no special or unusual facts to support her theory as to the creation of a fiduciary relationship between First American and/or Pioneer and her. She simply declares there to have been one because, being in the title insurance business, First

American and/or Pioneer have been involved in many loan closings, whereas she has not been. This hardly suffices.

The usual capacity of a title insurance company in a loan transaction is simply to insure the lender's lien position. It is otherwise essentially neutral as to both parties to a transaction. There is no allegation that First American performed any role other than is customary in this transaction. If Pennsylvania law does not automatically recognize a fiduciary relationship between a borrower and a lender, then the Court deems it most unlikely that, without more, it would recognize one between a title insurance company and a borrower, the relationship between which is even more attenuated. In short, assuming the truth of the Debtor's allegations, there is nothing in the complaint which either specifically or generally suggests how First American established a relationship of trust with the Plaintiff which would give rise to the fiduciary duty she asserts.

Pioneer Agency was somewhat closer to the transaction, at least geographically, because it conducted the actual loan closing. The Court's research regarding the duty of a title agency, however, fails to reveal the existence of duties such as the Debtor maintains in this context either. One particular case aptly described the limits of an individual performing a closing: "[closer], as agent for American Title did not have a duty to disclose to River City, the lender and policy holder, irregularities, illegalities or acts of fraud in the loan transaction." *Resolution Trust Corp. v. American Title Insur. Co.,* 901 F.Supp. 1122, 1124 (M.D.La.1995).

The Debtor obviously disagrees with this notion. On this score, at the hearing on the Motion to Dismiss the Debtor argued that the title agent which performed the closing had a duty not only to look out for her best interests, but an affirmative obligation to advise her not to enter into the transaction. The Court flatly rejects this proposition; it is simply not within the ambit of services undertaken by title agencies. Title agencies are intermediaries who perform essentially ministerial, administrative tasks associated with documenting the transactions which lenders and borrowers bring to them. They are neither the counselor to the borrower nor the lender. The law imposes no duty of advice and disclosure on a closing agent. Indeed, the request to impose the onerous, impractical and amorphous duties which the Debtor demands upon the title clerk who conducts a loan closing seems patently unreasonable.

In sum, the Debtor's Complaint 1) fails to plead allegations of fraud with the requisite degree of particularity, and 2) fails to state a cause of action on which relief can be granted insofar as the alleged existence of a fiduciary relationship between herself and the Movants. The present Motion to Dismiss will therefore be granted in its entirety.

An appropriate Order follows.

### ORDER

AND NOW, upon consideration of the Motion of Defendants First American Title Insurance Company and the Pioneer Agency to Dismiss Debtor's Amended Complaint under F.R.C.P. 12(b)(6), or in the alternative for an Order compelling a more definite statement of her pleading under F.R.C.P. 12(e) (the "Motion"), the Answer of the Debtor in opposition thereto, and after hearing thereon April 1, 2003, it is hereby:

ORDERED, that for the reasons stated in the accompanying Opinion, the Motion shall be and hereby is granted; the Complaint as to the Movants, First American

Title Insurance Company and Pioneer Agency shall be and hereby is Dismissed.